**The STATE of Ohio, Appellee,**

v.

**DAUGHERTY, Appellant.**

[Cite as *State v. Daugherty*, 165 Ohio App.3d 115, 2006-Ohio-240.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20779.

Decided Jan. 13, 2006.

Addie J. King, Assistant City Prosecutor, for appellee.

Glen H. Dewar, Public Defender, for appellant.

WOLFF, Judge.

{¶ 1} Stephen Daugherty pleaded guilty to a fourth-degree misdemeanor driver's-license violation on April 16, 2004. The court imposed 30 days' jail time and a $200 fine, all of which it suspended on condition that Daugherty perform 50 hours of community-service work and spend one year on unsupervised probation.

{¶ 2} On June 10, 2004, the court's community justice coordinator advised the court that Daugherty had not performed any community service and requested a capias. Daugherty was eventually arrested on the capias, and, after a brief appearance before the court on October 18, 2004, he was found to be in contempt of court and sentenced to seven days in jail, with credit for two days already served. Daugherty appeared with counsel and had no response to the court's statement that he hadn't done his community service, although the court invited him to respond. Execution of the sentence has been stayed pending appeal.

{¶ 3} Daugherty assigns error as follows:

{¶ 4} "When deciding whether to incarcerate the appellant for his failing to perform community service as a condition of his probation, the court should have followed the dictates of Criminal Rule 32.3 rather than using direct criminal contempt."

{¶ 5} The city of Dayton concedes error in this case.

{¶ 6} We agree with Daugherty that his failure to perform his community service can only be characterized as indirect contempt—R.C. 2705.02(A)—and that the court failed to properly charge Daugherty with indirect contempt. See R.C. 2705.03. Rather, the court's procedure resembles a proceeding in direct contempt, which was not appropriate given the nature of Daugherty's dereliction.

{¶ 7} While Daugherty claims that the appropriate course of action for the court was to consider revocation of probation under Crim.R. 32.3, we do not understand him to argue that this was the only course open to the court. In other words, indirect contempt proceedings, if conducted properly, might have been appropriate. See *State v. Self*, Montgomery App. No. 20370, 2005-Ohio-1120, 2005 WL 589887.

{¶ 8} Crim.R. 32.3, styled "Revocation of community release," states:

{¶ 9} "(A) Hearing

{¶ 10} "The court shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed. The defendant may be admitted to bail pending hearing.

{¶ 11} "(B) Counsel

{¶ 12} "The defendant shall have the right to be represented by retained counsel and shall be so advised. Where a defendant convicted of a serious offense is unable to obtain counsel, counsel shall be assigned to represent the defendant, unless the defendant after being fully advised of his or her right to assigned counsel, knowingly, intelligently, and voluntarily waives the right to counsel. Where a defendant convicted of a petty offense is unable to obtain counsel, the court may assign counsel to represent the defendant."

{¶ 13} The proceedings before the trial court culminating in the contempt finding appear to have complied with the requirements of Crim.R. 32.3. Of course, while compliance may be relevant to whether probation had been properly revoked, compliance with Crim.R. 32.3 would not be relevant to whether Daugherty was properly found to be in contempt.

{¶ 14} We also agree that the requirements of *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 786–787, 93 S.Ct. 1756, 36 L.Ed.2d 656, for probation revocations apply to probation-revocation proceedings in municipal courts. See *State v. Bender*, Champaign App. No.2004 CA 11, 2005-Ohio-919, 2005 WL 499051.

{¶ 15} Daugherty observes that although serving seven days for contempt may appear to make more sense than risking the 30 days he might have had to spend in jail should his probation have been revoked, had the city of Dayton sought to revoke his probation, he might well have been able to persuade the court that revocation was not appropriate, given that his probationary period was for one year, no deadline had been imposed within which to perform the community service (at least as far as the record shows), and several months remained within that probationary period during which he could perform community service.

{¶ 16} In any event, the contempt conviction must be reversed.

{¶ 17} The assignment of error is sustained. The contempt conviction is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FAIN and DONOVAN, JJ., concur.