[Cite as *State v. Greer*, 2025-Ohio-5775.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

City of Bellevue

v.

Milly J. Greer

        Appellant

Court of Appeals No.    {72}S-25-009
                             {72}S-25-010
                             {72}S-25-011

Trial Court No.  TRD2300104A
                       TRD2400806A
                       TRD2400689

**DECISION AND JUDGMENT**

Decided:  December 26, 2025

* * * * *

Henry Schaefer, for appellant.

* * * * *

**ZMUDA, J.**

## I. Introduction

**{¶ 1}** This is a consolidated appeal from three traffic cases in the Bellevue Municipal Court.  In one case, appellant, Milly Greer, admitted to a charge of contempt for failing to report to serve a 20-day jail sentence previously imposed for her conviction for driving under a 12-point suspension.  In the second case, she pled guilty to one count of driving under a financial responsibility law suspension, a misdemeanor of the fourth degree.  In the third case, she pled no contest to one count of driving under a financial

responsibility law suspension, a misdemeanor of the first degree. Greer argues on appeal that her pleas were not knowingly, intelligently, and voluntarily given because the trial court failed to notify her of the effect of her guilty plea, no contest plea, and admission to the charge of contempt. For the reasons that follow, the trial court's judgments are affirmed, in part, and reversed, in part, and the matter is remanded for further proceedings.

## II. Background and Procedural History

{¶ 2} In case No. TRD2300104A, on December 5, 2023, Greer pled no contest to driving under a 12-point suspension in violation of R.C. 4510.037(J), a misdemeanor of the first degree.[1] The trial court found her guilty and sentenced her to 90 days in jail with 70 days suspended. It ordered her to serve the 20 days that were not suspended by June 1, 2024, in two sets of ten days. Greer did not appear to serve her jail sentence, and on June 11, 2024, the State filed a motion to hold her in contempt.

{¶ 3} In case No. TRD2400689, on July 15, 2024, Greer was charged with one count of driving under a financial responsibility law suspension in violation of R.C. 4510.16, a misdemeanor of the fourth degree.

---

[1] Greer also pled no contest to and was found guilty of one count of tinted windows in violation of R.C. 4513.241, a minor misdemeanor. The trial court sentenced her to pay a $40 fine and court costs.

2.

{¶ 4} In case No. TRD2400806A, on August 20, 2024, Greer was charged with one count of driving under a financial responsibility law suspension in violation of R.C. 4510.16, a misdemeanor of the first degree.[2]

{¶ 5} The three cases came before the court on March 3, 2025.

{¶ 6} In case No. TRD2300104A, the following occurred:

> [DEFENSE COUNSEL]:  Your Honor, at this time [Greer] would change to an admittance of the contempt motion.
>
> COURT:  Ma'am, you're represented by counsel; is that correct? Would you like to admit to the contempt at this time?
>
> MS. GREER:  Yes, sir.
>
> COURT:  Have you been explained the consequences of you admitting to being in contempt of Court?
>
> MS. GREER:  Yes, sir.
>
> COURT:  Are you satisfied with the representation that you've had here today?
>
> MS. GREER:  Yes, sir.
>
> COURT:  I'm going to find that you are in contempt.  I'm going to order that you serve the remaining 70 days of jail that you've had suspended on that case.

{¶ 7} Next, in case No. TRD2400689, the following exchange took place:

> [DEFENSE COUNSEL]:  Your Honor, at this time we'd ask the Court to accept a change to a guilty plea on that count, um, in exchange for sentencing within the guidelines discussed previously off the record.

---

[2] Greer was also charged with one count of loud exhaust in violation of R.C. 4513.22, a minor misdemeanor.  This count was dismissed by the State pursuant to a plea agreement.

3.

COURT: Again, ma'am, do you understand your (*recording skipped*) consequences of changing your plea from not guilty to no contest (sic)?

MS. GREER: Yes, sir.

COURT: And is that how you would like to proceed to the -- with this charge?

MS. GREER: Yes Sir.

COURT: Are you doing -- doing so knowingly and voluntarily?

MS. GREER: Yes, sir.

COURT: Are you under the influence of anything today that would cloud your judgment.

MS. GREER: No, sir.

COURT: You are thinking clearly?

MS. GREER: Yes, sir.

COURT: Okay. And you're satisfied with the representation that you've had in this matter?

MS. GREER: Yes, sir.

COURT: I'm going to accept your guilty plea and find you guilty.

{¶ 8} Finally, in case No. TRC2400806A, defense counsel indicated that Greer would change her plea to no contest. The court then requested a recitation of the facts, which was provided by the State. After hearing the facts, the trial court accepted Greer's no contest plea and found her guilty without conducting any inquiry of her.

{¶ 9} Ultimately, the trial court sentenced Greer to serve the suspended 70 days in jail for the charge of contempt in case No. TRD2300104A. It also ordered her to serve

4.

30 days in jail with 20 days suspended in case No. TRD2400689, and 180 days in jail with 170 days suspended in case No. TRD2400806A. The trial court further ordered the non-suspended days to be served consecutively for a total of 90 days in jail.

{¶ 10} This appeal followed.

### III. Assignments of Error

{¶ 11} Greer raises the following assignments of error in her appeal:

> 1. The trial court erred by accepting Ms. Greer's guilty plea in Case No. TRD2400689 and no contest plea in case No. TRD2400806 without conducting a proper plea colloquy as required by Ohio Traffic Rule 10(D), thereby rendering the pleas involuntary, unknowing, and unintelligent in violation of her due process rights under the Ohio and U.S. Constitutions.

> 2. The trial court erred in its handling of the contempt hearing in Case No. TRD2300104 by failing to provide adequate notice of the consequences of admitting to contempt and by imposing the suspended sentence as a contempt sanction without a separate penalty, violating Ms. Greer's due process rights under R.C. 2705.03 and the Ohio and U.S. Constitutions.

> 3. The sentence imposed in TRD2300104 is contrary to law.

The State has not filed a brief in response.

### IV. Analysis

### A. Trial Court's Obligation under Traf.R. 10(D) when Accepting Pleas of Guilty and No Contest

{¶ 12} In her first assignment of error, Greer argues that the trial court failed to properly advise her as required by Traf.R. 10(D), and therefore her pleas of guilty and no contest in case Nos. TRD2400689 and TRD2400806(A), respectively, were not knowingly, intelligently, and voluntarily made.

5.

{¶ 13} Traf.R. 10(D) provides, in relevant part, "[T]he court may refuse to accept a plea of guilty or no contest and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty. This information may be presented by general orientation or pronouncement." Notably, Traf.R. 10(D) is "identical in all relevant respects" to Crim.R. 11(E), which applies to misdemeanor cases involving petty offenses. *State v. Watkins*, 2003-Ohio-2419, ¶ 15; *State v. Everson*, 2018-Ohio-323, ¶ 8 (6th Dist.). "Accordingly, cases analyzing a court's duties under Crim.R. 11(E) can also be applied to cases analyzing Traf.R. 10(D)." *Everson* at ¶ 8, citing *Watkins* at ¶ 15; *see State v. Sting*, 2012-Ohio-3113 (6th Dist.).

{¶ 14} To comply with Traf.R. 10(D), the trial court must "inform[] the defendant of the information contained in Traf.R. 10(B)." *Watkins* at ¶ 28; *see also State v. Jones*, 2007-Ohio-6093, paragraph two of the syllabus ("To satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B)."). Traf.R. 10(B) describes the effect of the pleas: a "plea of guilty is a complete admission of the defendant's guilt;" a "plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."

{¶ 15} In addition to arguing that the trial court failed to inform her of the effect of her pleas, Greer also argues that the trial court failed to inform her of the consequences of entering her pleas, namely the range of penalties she could face. Traf.R. 10(D), however,

6.

does not require the trial court to inform the defendant of the potential penalties. *See Jones* at ¶ 22 (distinguishing "effect of a plea" in Crim.R. 11(E) [and Traf.R. 10(D)] from statements relating to a maximum penalty and the right to jury trial under Crim.R. 11(C)(2)(a) through (c)). Instead, "[w]hen a defendant charged with a petty misdemeanor traffic offense pleads guilty or no contest, the trial court complies with Traf.R. 10(D) by informing the defendant of the information contained in Traf.R. 10(B)." *Watkins* at syllabus. We will, therefore, focus our analysis only on the effect of the pleas of guilty and no contest as described in Traf.R. 10(B).

### 1. Guilty Plea in case No. TRD2400689

{¶ 16} In case No. TRD2400689, Greer pled guilty to the count of driving under a financial responsibility law suspension. Thus, the trial court was required to "inform the defendant that '[t]he plea of guilty is a complete admission of the defendant's guilt.'" *Everson* at ¶ 9, quoting Traf.R. 10(B)(1). The colloquy between the trial court and Greer contains no such instruction. Furthermore, although Traf.R. 10(D) expressly permits the trial court to inform defendants of the effect of pleas through general orientation or pronouncement, the record contains no indication that such a general orientation or pronouncement was made in this case. The trial court, therefore, failed to comply with Traf.R. 10(D).

{¶ 17} "When a criminal defendant seeks to have [her] conviction reversed on appeal, the traditional rule is that [she] must establish that an error occurred in the trial-court proceedings and that [she] was prejudiced by that error." *State v. Dangler*, 2020-

7.

Ohio-2765, ¶ 13, citing *State v. Perry*, 2004-Ohio-297, ¶ 14-15.  "The test for prejudice is 'whether the plea would have otherwise been made.'"  *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).  Exceptions exist to this traditional rule, however.

{¶ 18} One exception to the prejudice requirement is the trial court's *complete* failure to comply with the notification requirements.  *Dangler* at ¶ 15; *State v. Sarkozy*, 2008-Ohio-509, ¶ 22; *see also State v. McGlinch*, 2019-Ohio-1380, ¶ 31 (2d Dist.) (defendant not required to demonstrate prejudice where the trial court completely failed to comply with Traf.R. 10(D)).  But this exception is subject to its own exception "in instances where the trial court failed to inform the defendant of the effect of a guilty plea."  *State v. Willis*, 2019-Ohio-1182, ¶ 16 (6th Dist.)

{¶ 19} In *Willis*, the trial court failed to comply with Crim.R. 11(E) because it "did not tell Willis (either orally or in writing) that his guilty plea was a complete admission of his guilt."  *Id.* at ¶ 15.  This court nonetheless assumed "that the trial court *partially* complied (rather than failed to comply) with Crim.R. 11(E)" because Willis did not assert his actual innocence at the plea hearing and thus "subjectively understood that he was completely admitting his guilt by pleading guilty."  (Emphasis sic.)  *Id.* at ¶ 17.  This court reasoned,

> In [*State v.*] *Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, at ¶ 14, the Supreme Court of Ohio recognized that a trial court's failure to inform the defendant of the effect of a guilty plea, specifically, is subject to a unique analysis because "[a] plea of guilty *is* a complete admission of guilt."  (Emphasis sic.)  That is, when a defendant affirmatively indicates that he or she is "guilty" of the charge, it is—necessarily and patently—a complete admission of guilt.  In other words, "a complete admission of guilt" is more than just the *effect* of a guilty plea; it is the *very nature* of a

8.

guilty plea. For that reason, "a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Id.* at ¶ 19.

(Emphasis sic.) *Willis* at ¶ 16; *accord State v. Lucas*, 2025-Ohio-5303, ¶ 14 (6th Dist.); *State v. Vasquez*, 2024-Ohio-2496, ¶ 20 (6th Dist.).

{¶ 20} *Willis* is applicable to the facts here. Greer entered a guilty plea and did not assert actual innocence. To the contrary, she admitted she had been driving without a valid license, and she stated the best thing that happened to her was that her car was taken away, which removed the temptation. Consistent with *Willis*, because it is presumed that Greer subjectively understood that she was completely admitting her guilt when she entered the guilty plea, the trial court at least partially complied with Traf.R. 10(D). Greer, therefore, is required to demonstrate prejudice by showing that she would not have entered the guilty plea if the trial court had informed her of its effect. Greer makes no attempt to do so.

{¶ 21} Accordingly, because Greer has not demonstrated that she has been prejudiced by the trial court's failure to comply with Traf.R. 10(D), she is not entitled to have her guilty plea in case No. TRD2400689 vacated.

**2. No Contest Plea in case No. TRD2400806A**

{¶ 22} In contrast, in case No. TRD2400806A, Greer pled no contest to the count of driving under a financial responsibility law suspension. "[F]or a no contest plea, a defendant must be informed that the plea of no contest is not an admission of guilt but is

an admission of the truth of the facts alleged in the complaint, and that the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." *Jones* at ¶ 23, citing Traf.R. 10(B)(2).

{¶ 23} As with her guilty plea, the record does not demonstrate that the trial court informed her of the effect of a no contest plea. Unlike her guilty plea, however, the plea of no contest does not come with a presumption that the defendant subjectively understands its effect. The trial court's failure to inform her of the effect of the plea, therefore, was a *complete* failure under Traf.R. 10(D). Because the trial court completely failed to comply with Traf.R. 10(D), Greer is not required to demonstrate that the error was prejudicial. *Dangler* at ¶ 15; *State v. Hudson*, 2025-Ohio-5258, ¶ 16-17 (6th Dist.); *State v. Schuster*, 2023-Ohio-3038, ¶ 15 (1st Dist.); *State v. McGlinch*, 2019-Ohio-1380, ¶ 31 (2d Dist.); *State v. Williams*, 2018-Ohio-1000, ¶ 4-6 (6th Dist.).

{¶ 24} Accordingly, Greer's no contest plea in case No. TRD2400806A is vacated.

### 3. Summary

{¶ 25} In sum, Greer's first assignment of error is well-taken, in part, and not well-taken, in part. In case No. TRD2400689, Greer has not demonstrated any prejudice from the trial court's failure to inform her of the effect of her guilty plea, and that conviction is affirmed. In case No. TRD2400806A, Greer is not required to demonstrate any prejudice from the trial court's complete failure to inform her of the effect of her no contest plea, and that conviction is reversed and her plea is vacated.

10.

### B. Trial Court's Obligation to Defendant Before Accepting Admission to Charge of Contempt

{¶ 26} In her second assignment of error, Greer argues that her due process rights were violated when the trial court accepted her admission to the charge of contempt without informing her of the potential consequences.

{¶ 27} As an initial matter, we note that the trial court pursued contempt proceedings rather than a hearing on the probation violation. In her brief, Greer notes the overlapping remedies of contempt and probation violation for her failure to comply with the trial court's order to serve her 20-day jail sentence by June 1, 2024, recognizing that since "violations of probation generally constitute violations of a court order, it is not unreasonable to see how both contempt and a probation violation apply." While she does not assign it as an error or otherwise argue that the trial court was not permitted to proceed with contempt, she does cite *In re Burt*, 2007-Ohio-4034, ¶ 40 (5th Dist.), in which the Fifth District commented that

> courts should not use the inherent contempt power to punish a violation of a condition of probation that would not otherwise constitute an offense. We do not believe that when the Legislature expressly provided that the sanction for a violation of probation (other than for the inherent criminality of the act) would be a revocation of probation, it intended that a defendant would be subject to a new indictment for contempt in addition to the punishment for the original offense.

{¶ 28} In *State v. Patton*, 2007-Ohio-1296, ¶ 11 (10th Dist.), the Tenth District observed that appellate courts appear divided on this issue. "Some courts have assumed that probation revocation proceedings are the sole remedy." *Id.*, citing *State v. Smith*, 2002-Ohio-6710, ¶ 8 (7th Dist.) ("The municipal court treated Smith's alleged failure to

11.

attend the counseling sessions as an act of contempt rather than a violation of probation. This was an error by the trial court."); *see also Cleveland v. Serrano*, 2021-Ohio-1586, ¶ 30 (8th Dist.) ("Based upon the plain language of R.C. 2929.25(D)(2), courts cannot charge offenders who violate the conditions of their community control sanctions with criminal contempt."); *State v. Jacobs*, 2000 WL 924822, *1 (3d Dist. June 29, 2000) (municipal court "erroneously" treated violation of community control condition of no contact with the victim "as an indirect contempt proceeding rather than a probation revocation hearing."). "Other courts have assumed that contempt proceedings could be used in such cases." *Patton* at ¶ 11, citing *State v. Daugherty*, 2006-Ohio-240, ¶ 7 (2d Dist.) ("While Daugherty claims that the appropriate course of action for the court was to consider revocation of probation under Crim.R. 32.2, we do not understand him to argue that this was the only course open to the court. In other words, indirect contempt proceedings, if conducted properly, might have been appropriate.").

{¶ 29} Considering the issue, *Patton* reasoned,

> Unquestionably, the preferred method for dealing with actions such as those taken by appellant would be the institution of revocation proceedings. However, courts have traditionally been viewed as having very broad authority to use contempt proceedings to vindicate the authority of the court. *Denovchek v. Board of Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 520 N.E.2d 1362. In the absence of any statutory provision limiting the use of contempt proceedings in cases where the court order or judgment being disobeyed is a sentencing entry, we are reluctant to impose such a limitation on the court's inherent authority.

*Id.* at ¶ 12.

12.

{¶ 30} Here, because Greer does not assign this issue as an error, we do not decide whether the trial court erred in proceeding with contempt. *See* App.R. 12(A)(1)(b) (court of appeals shall "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16); *Bonn v. Bonn*, 2013-Ohio-2313, ¶ 9 (10th Dist.) ("[T]his court rules on assignments of error only, and will not address mere arguments."); *Jensen v. AdChoice, Inc.*, 2014-Ohio-5590, ¶ 23, fn.4 (6th Dist.). We note, however, that regardless of the label, Greer was afforded a fair and impartial hearing to determine whether she had violated the specific terms and conditions of her probation, and was sentenced to a penalty appropriate for her violation of the terms of her probation as set forth in the trial court's December 5, 2023 order. *See Jacobs*, 2000 WL 924822, at *1 (Error in treating probation violation as contempt was harmless beyond a reasonable doubt because defendant was afforded a fair and impartial hearing and there was "no actual prejudice to the appellant arising from the manner in which the proceedings were conducted.").

{¶ 31} While noting the contempt proceedings mirrored a revocation hearing, we nevertheless address Greer's second assignment of error as articulated, and limit our review to the claimed lack of due process within the contempt proceedings.

{¶ 32} Contempt can be criminal or civil. "[I]n determining whether a contempt is civil or criminal, the pertinent test is 'what does the court primarily seek to accomplish by imposing sentence.'" *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554-555 (2001), quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "Civil contempt sanctions

13.

are designed for remedial or coercive purposes and are often employed to compel obedience to a court order." *Id.* at 555; *In re Disqualification of Ruehlman*, 2024-Ohio-1306, ¶ 36. "Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court." *Id.*; *Ruehlman* at ¶ 36. "Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." *Id.*, citing *State v. Kilbane*, 61 Ohio St.2d 201, 204-205 (1980).

{¶ 33} Greer argues that her contempt was criminal. Here, she was charged with contempt for failing to obey the trial court's order to complete her jail term by June 1, 2024, which is an offense against the process of the court. Further, because the 70-day sanction imposed by the trial court was punitive in nature and was designed to vindicate the trial court's authority, we agree that Greer was charged with criminal contempt.

{¶ 34} Contempt can also be direct or indirect. "'Direct contempt occurs "in the presence of or so near the court or judge as to obstruct the administration of justice."'" *Ruehlman* at ¶ 35, quoting *Burt v. Dodge*, 65 Ohio St.3d 34, 35, fn. 1 (1992), quoting R.C. 2705.01. "Indirect contempt occurs outside the court's presence, and the alleged contemnor is entitled to a hearing before [she] may be convicted and punished." *Id.*, quoting *Burt* at 35, fn. 1. In this case, Greer's conduct occurred outside of the presence of the court and was therefore indirect contempt.

14.

{¶ 35} "A party subject to indirect criminal contempt is afforded many of the same constitutional safeguards and due process rights as a defendant in a criminal trial." *In re Guardianship of Finan*, 2014-Ohio-3572, ¶ 21 (5th Dist.), citing *U.S. v. Dixon*, 509 U.S. 688, 696 (1993); *Lillo v. Lillo*, 2004-Ohio-4848, ¶ 32 (6th Dist.). "Specifically, a person charged with indirect criminal contempt is entitled to all the procedural due process protections afforded in criminal proceedings, including the right to notice of the charges, the right to defend oneself and be heard, the right to counsel, and the right that there be proof beyond a reasonable doubt to support a conviction." *Id.*, citing *Intl. Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994).

{¶ 36} Here, the charge of contempt related to Greer's failure to serve the sentence from a traffic offense in municipal court. She received notice of the contempt charge, was present with counsel at a hearing on the contempt charge, and the contempt was proven beyond a reasonable doubt. Notably, Greer does not dispute on appeal that she did not, in fact, serve her jail term by June 1, 2024.

{¶ 37} Greer contends that she nonetheless did not receive due process because she was not informed of the potential penalties she was facing by admitting to the contempt. Because this matter involved a charge of contempt from a traffic offense in municipal court, the protections afforded for misdemeanor cases involving petty offenses under Crim.R. 11(E) apply. Crim.R. 11(E)—unlike Crim.R. 11(C), which applies to felony cases—"*does not require* a court to inform the defendant of 'the maximum penalty, the right to a jury trial, or other rights.'" (Emphasis sic.) *State v. Scott*, 2025-

15.

Ohio-1244, ¶ 21 (4th Dist.), quoting *Cleveland v. Greene*, 2024-Ohio-4899, ¶ 6 (8th Dist.), citing *Jones*, 2007-Ohio-6093, at ¶ 22.

{¶ 38} Accordingly, we hold that the trial court did not violate Greer's due process rights when it accepted her admission to the charge of contempt of court. Greer's second assignment of error is not well-taken.

### C. Trial Court's Imposed Penalty Following Finding of Contempt

{¶ 39} Finally, in her third assignment of error, Greer argues that the trial court's imposition of a 70-day jail term for contempt was contrary to law. She cites R.C. 2705.05, which provides,

> (A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:
> (1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both.

She argues that because her 70-day jail sentence exceeded the maximum penalty for a first offense, it was contrary to law.

{¶ 40} The Ohio Supreme Court has held, however, that "[t]he inherent power of a court to punish for contempt of court may not be limited by legislative authority, nor does such power depend upon express constitutional grant." *State v. Local Union 5760, United Steelworkers of Am.*, 172 Ohio St. 75 (1961), paragraph one of the syllabus. This is because "[a] court created by the constitution has inherent power to define and punish contempts, such power being necessary to the exercise of judicial functions." *State ex*

16.

*rel. Johnson v. Cty. Court of Perry Cty.*, 25 Ohio St.3d 53, 54 (1986), quoting *State ex rel. Turner v. Albin*, 118 Ohio St. 527 (1928), paragraph one of the syllabus. Thus, "controlling precedent unequivocally establishes the full discretion of the trial court to craft a sanction without regard to [R.C. 2705.05's] statutory penalties." *City of Toledo v. Ross*, 2007-Ohio-451, ¶ 24 (6th Dist.) (involving appeal from conviction for contempt of court in municipal court); *see also Cleveland v. Bright*, 2020-Ohio-5180, ¶ 45 (8th Dist.) (in review of contempt from municipal court, recognizing that "it is well established that trial courts are not bound by the sanction limits set forth in R.C. 2705.05 when imposing a penalty for contempt."); *Johnson v. Johnson*, 2020-Ohio-1644, ¶ 20 (2d Dist.) ("Although R.C. 2705.05(A) does prescribe sanctions for indirect contempt violations such as the one at issue here, common pleas courts are not required to follow it.").

{¶ 41} Accordingly, because the trial court's imposition of the 70-day jail sentence is within its inherent authority to punish Greer's contempt, it is not contrary to law. Greer's third assignment of error is not well-taken.

## IV. Conclusion

{¶ 42} For the foregoing reasons, the judgments of the Bellevue Municipal Court are affirmed, in part, and reversed, in part. In case No. TRD2400689, Greer has not demonstrated any prejudice from the trial court's failure to inform her of the effect of her guilty plea, and her conviction is affirmed. In case No. TRD2400806A, Greer is not required to demonstrate any prejudice from the trial court's complete failure to inform her of the effect of her no contest plea, and her conviction is reversed and her plea is

17.

vacated. In case No. TRD2300104A, the trial court was not required to inform her of the potential penalties for contempt of court, and its 70-day jail sentence was within its inherent authority to punish Greer's contempt, and her conviction is affirmed. Case No. TRD2400806A is remanded to the trial court for further proceedings.

{¶ 43} Costs of this appeal are to be shared evenly by the parties pursuant to App.R. 24.

Judgment affirmed, in part, reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.            _____

Gene A. Zmuda, J.             JUDGE

Charles E. Sulek, P.J.           _____
CONCUR.                         JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.